UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LINDA MANGANO,

                 Plaintiff,

     -against-

THOMAS CAMBARIERE, Individually and as
Village of Ossining Trustee and Mayor, PENNY
MARKOWITZ-MOSES, Individually and as Village
of Ossining Trustee and Deputy Mayor, JOHN A.
PERILLO, Individually and as Village of Ossining
Mayor, ANTHONY PARISE, Individually and as
Village of Ossining Trustee, O. PAUL SHEW,
Individually and as Village Manager of Ossining,
GRACE DICUIRCI, Individually and as Village of
Ossining Parking Violations Bureau Clerk, RENE
MOSQUEDA, Individually and as Village of Ossining
Parking Enforcement Officer, LOUIS CARAISCO,
Individually and as Village of Ossining Building
Inspector, DAVID STONE, Individually and as
Village of Ossining Administrative Assistant, JOHN
GREENAN, Individually and as Village of Ossining
Police Officer, FRED CIOFFI, Individually and as
Village of Ossining Detective, JOSEPH PUGLIESE,
Individually and as Village of Briarcliff Manor
Detective and THE VILLAGE OF OSSINING,

                 Defendants.
------------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

04 Civ. 4980 (SCR) (GAY)

      Plaintiff Linda Mangano is a resident of the Village of Ossining. Mangano is a self-styled "watchdog" over Ossining Village government. Over the last twenty years or so, she has publicly complimented and criticized Village officials and employees for their official actions. Mangano filed the instant suit alleging that defendants violated her federal and state constitutional rights and her rights under New York State law in retaliation for her political advocacy. Presently before this Court are defendants'

motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1] For the reasons set forth below, (1) the Village defendants' motion is granted in part and denied in part and (2) defendant Pugliese's motion is granted.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must "'resolve all ambiguities and inferences . . . in the light most favorable to the party opposing the motion.'" Neratko v. Frank, 31 F. Supp. 2d 270, 278 (W.D.N.Y. 1998) (quoting Shockley v. Vermont State Colleges, 793 F.2d 478, 481 (2d Cir. 1986)). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo

---

[1] This motion is before me on the consent of the parties, pursuant to 28 U.S.C. §636(c).

v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## II.  NEW YORK STATE CONSTITUTIONAL CLAIMS

Plaintiff seeks relief for violations of the equal protection, right to free speech and right to petition the government for redress of grievances clauses of the state constitution. Defendants did not address said claims in their summary judgment motion. Nonetheless, the Court must *sua sponte* dismiss said claims "because no private right of action exists for violations of the New York State Constitution where a Plaintiff has alternative damage remedies available" under § 1983. See Flores v. City of Mount Vernon, 41 F. Supp.2d 439, 447 (S.D.N.Y. 1999). Here, plaintiff has stated viable claims pursuant to § 1983, alleging (*inter alia*) violations of her Fourteenth Amendment right to equal protection and her First Amendment rights to free speech and access to the courts. Accordingly, plaintiff's claims for violations of the New York State Constitution are dismissed.

## III.  CONSPIRACY

Plaintiff alleges that the individual defendants conspired to intentionally violate her First, Fourth and Fourteenth Amendment rights and knowingly failed or refused to act to prevent the conspiracy. In order to prevail on a claim for conspiracy under 42 U.S.C. § 1983, plaintiff must show that defendants "acted in a willful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated [her]

rights, privileges, or immunities secured by the Constitution or federal courts." Shabazz v. Pico, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (quotations and citations omitted).  In other words, plaintiff must demonstrate "an agreement among two or more persons . . . [with] substantial facts giving rise to an inference of a meeting of the minds of the alleged conspirators."  Rodriguez v. Selsky, No. 02 Civ. 2580, 2003 WL 23018812, at *5 (S.D.N.Y. Dec. 22, 2003) (quotation and citation omitted).  Mere conclusory, vague or general allegations of conspiracy must be dismissed.  See Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir. 1997).  "Specifically, plaintiff must provide some factual basis supporting a 'meeting of the minds,' such as that defendants 'entered into an agreement, express or tacit, to achieve the unlawful end.'"  Romer v. Morgenthau, 119 F. Supp.2d 346, 363 (S.D.N.Y. 2000) (quoting Warren v. Fischl, 33 F. Supp.2d 171, 177 (E.D.N.Y. 1999)).  Here, apart from plaintiff's conclusory assertion that the individual defendants conspired against her, there is no evidence in the extensive record to support the necessary reasonable inference of a "meeting of the minds."  Accordingly, plaintiff's conspiracy claims are dismissed.

## IV.  FIRST AMENDMENT RETALIATION

Plaintiff alleges that defendants took various actions against her in retaliation for her exercise of her First Amendment rights to criticize and petition her government.  In order to succeed on her retaliation claim, plaintiff must demonstrate: (1) that the speech or conduct at issue is protected under the First Amendment; (2) that the defendants took adverse action against her; (3) that there was a causal connection between plaintiff's protected conduct and the adverse action, and (4) that the defendants' action chilled the exercise of plaintiff's First Amendment right.  See Scott v. Coughlin, 344 F.3d

282, 287 (2d Cir. 2003) (first three elements); Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (requirement that the exercise of First Amendment right is "actually chilled"). Here, plaintiff fails to proffer evidence of even one example of a situation in which she desired to exercise her First Amendment rights but was chilled by defendants' alleged actions. Further, there is no evidence in the record to support a finding that defendants' alleged conduct has deterred plaintiff from engaging in free speech or seeking judicial redress. Accordingly, plaintiff's First Amendment retaliation claim must be dismissed.

**V.  MALICIOUS PROSECUTION**

Plaintiff alleges malicious prosecution against defendants DiCuirci, Mosqueda, Cioffi and Pugliese. In order to establish a § 1983 claim for malicious prosecution, plaintiff must demonstrate (1) that defendants initiated a prosecution against her, (2) that defendants lacked probable cause to believe the proceeding could succeed, (3) that defendants acted with malice, (4) that the prosecution terminated in her favor and (5) that there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. See Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

A.  Underlying Facts

Plaintiff called the Parking Bureau Office and left the following messages, among others, for DiCuirci and Mosqueda:

> I wish all of you death . . . You should all die. You should all die of cancer and your children also. Save this fucking message Gracie . . .
>
> For each ticket I get people, I am taking this personally. I will pray for an early death for your kids. Mark it. Nasty person. Just remember

>people, every action.
>
>People, for every action there is a reaction. I paid my money. Don't you ever wonder why, Gracie, I get so fucking upset. I think of you and my fucking blood boils. Am I ashamed of myself for cursing . . . I am ashamed of you . . . Rene, consider yourself warned. I'm fucking fed up. I don't care about it, any directive you get. I'm taking this personally now . . . .
>
>Every action people, there is a reaction. You have provoked the nastiness in me. I paid my money, where are the certificate of parking permits? Selective enforcement Rene. Wait, Gracie I wish you harm and your kid Tommy harm. Jesus Christ, aren't I getting goddam nasty? Every action is a reaction schmucks . . . .

DiCuirci and Mosqueda contacted the police, who assigned Detective Cioffi to investigate. After interviewing DiCuirci, Cioffi brought the matter, and a copy of the tape, to the District Attorney. DiCuirci and Mosqueda executed supporting depositions, and Cioffi filed the misdemeanor information charging plaintiff with Aggravated Harassment in the Second Degree (N.Y. Penal Law § 240.30(1)). The case was subsequently transferred to Briarcliff Manor; Officer Pugliese filed the misdemeanor complaint (substantively identical to the first) at the request of the Briarcliff Manor Justice Court.

On June 6, 2002, plaintiff was convicted (by jury verdict) of the crime charged; the Appellate Term subsequently affirmed the decision. On July 2, 2003, the New York Court of Appeals reversed plaintiff's conviction on the ground that the messages, although "crude and offensive," were made "in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public." See People v. Mangano, 100 N.Y.2d 569, 796 N.E.2d 470, 764 N.Y.S.2d 379 (2003).

B.  Defendants DiCuirci and Mosqueda

In order to hold DiCuirci and Mosqueda liable for malicious prosecution, plaintiff must demonstrate, *inter alia*, that they initiated the prosecution against her.  DiCuirci and Mosqueda contacted the police regarding plaintiff's messages, and provided supporting depositions.  It is well-settled that reporting a crime to law enforcement and providing testimony does not constitute "initiation" of a criminal proceeding.  See Rothstein v. Carriere, 373 F.3d 275, 293-94 (2d Cir. 2004).  Nonetheless, DiCuirci and Mosqueda may be found to have initiated criminal proceedings if plaintiff demonstrates that they "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  See id. at 294 (quotation and citation omitted).  Here, plaintiff alleges that DiCuirci and Mosqueda played such a role.  However, contrary to plaintiff's allegations, the record is devoid of evidence from which a jury could infer that DiCuirci and Mosqueda did anything more than report potentially criminal conduct.  Accordingly, DiCuirci and Mosqueda are entitled to summary judgment on plaintiff's malicious prosecution claim.

C.  Probable Cause

Defendants argue that plaintiff's malicious prosecution claim must be dismissed because there was probable cause to charge her with second degree aggravated harassment.  Plaintiff was charged pursuant to New York Penal Law § 240.30(1), which stated[2] that a person is guilty of second degree aggravated harassment "when, with intent to harass, annoy, threaten or alarm another person, he or she . . . communicates .

---

[2] Subsequent amendments to the statute are not relevant to the issue at hand.

. . with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm." Here, DiCuirci's and Mosqueda's supporting depositions were sufficient to establish probable cause to charge plaintiff with second degree aggravated harassment. Further, although the reversal of plaintiff's conviction is evidence of the absence of probable cause, it does not preclude a finding of probable cause; otherwise "the dismissal of criminal charges would automatically render the prior arrest of the defendant illegal. This cannot be the case." See Dorn v. Maffei, 386 F. Supp.2d 479, 484 (S.D.N.Y. 2005). In sum, based upon the evidence, no reasonable jury could conclude that there was an absence of probable cause to charge the plaintiff with second degree aggravated harassment. Accordingly, plaintiff's malicious prosecution claim is dismissed.

    D. Qualified Immunity

In any event, resolving all ambiguities and drawing all inferences in favor of plaintiff, there are no genuine issues of material fact which would preclude a finding that Cioffi and Pugliese are entitled to qualified immunity on plaintiff's malicious prosecution claim. Police officers accused of malicious prosecution are entitled to qualified immunity if other officers of reasonable competence could disagree on the existence of probable cause, "and nothing occurred between the arrest and the prosecution to alter this" belief. See Rogers v. Amsterdam, 303 F.3d 155, 159 (2d Cir. 2002). Based upon the evidence here, police officers of reasonable competence could, at the very least, disagree as to whether there was probable cause to charge plaintiff under New York Penal Law § 240.30(1). Indeed, as stated above, this Court concludes that probable

cause did exist. Accordingly, as to plaintiff's malicious prosecution claim, defendants Cioffi and Pugliese are entitled to qualified immunity.

## VI. ABUSE OF PROCESS

Plaintiff alleges that defendants DiCuirci, Mosqueda, Cioffi and Pugliese are also liable for abuse of process. An abuse of process claim under § 1983 is governed by state law. See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir.1994). Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quotation and citation omitted). Here, plaintiff fails to allege that defendants "aimed to achieve a collateral purpose beyond or in addition to [her] criminal prosecution." See id. at 77. Specifically, plaintiff's allegation that defendants were motivated by retaliation is insufficient to support a claim for abuse of process. See id. Accordingly, plaintiff's abuse of process claim is dismissed.

## VII. SELECTIVE ENFORCEMENT

Plaintiff alleges that the individual defendants subjected her to selective enforcement in violation of her equal protection rights, for the purpose of inhibiting or retaliating against her exercise of her First Amendment rights. Plaintiff specifically alleges that the individual defendants (1) selectively enforced the Village Parking Law and the New York State Vehicle and Traffic Law, (2) denied plaintiff access to public buildings, (3) subjected plaintiff to discriminatory F.O.I.L. procedures and (4) discriminated against plaintiff during the course of the adjudication of her pending

cases.

To establish a claim of selective prosecution, plaintiff must demonstrate that (1) she was selectively treated compared to others similarly situated and (2) such selective treatment "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (internal quotation marks and citation omitted). In order to satisfy the first element, plaintiff must demonstrate that she was treated differently from persons who are "similarly situated in all material aspects." See Richardson v. Newburgh Enlarged City Sch. Dist., 984 F. Supp. 735, 746 (S.D.N.Y. 1997) (quotation and citation omitted). In determining whether persons are similarly situated, "the relevant aspects are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely not necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." Estate of Morris v. DaPolito, 297 F. Supp.2d 680, 686 (S.D.N.Y. 2004) (quotation and citation omitted).

Here, as to plaintiff's first, third and fourth grounds, there is no evidence in the record from which a reasonable jury could conclude that plaintiff was selectively treated compared to others similarly situated. Accordingly, plaintiff's selective enforcement claim based on grounds one, three and four (as enumerated above) is dismissed.

Plaintiff also alleges that she was denied access to public buildings. Specifically, plaintiff alleges that (1) defendant Caraisco barred plaintiff from the Ossining Building Department beginning in September 1991, (2) in or about June 1995, defendant Stone denied plaintiff access to the Ossining Department of Public Works and (3) from

September 1998 until July 2003, plaintiff was denied access to and barred from the Ossining Parking Violations Bureau.

    A.  <u>Individual Liability</u>

In order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, <u>inter alia</u>, that the defendant caused the deprivation of plaintiff's rights.  See <u>Taylor v. Brentwood Union Free Sch. Dist.</u>, 143 F.3d 679, 685 (2d Cir. 1998) (citation omitted). The Second Circuit has delineated several ways in which a defendant may be personally involved in a constitutional deprivation so as to be liable under §1983:  (1) "[t]he defendant may have directly participated in the infraction"; (2) "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; (3) "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices continue"; (4) "a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event."  <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986).

In the first instance, plaintiff proffers no evidence that defendants Cambariere, Markowitz-Moses, Perillo, Parise, Shew, DiCuirci, Mosqueda, Greenan, Cioffi or Pugliese in any way allegedly caused plaintiff to be barred from either the Building Department, the Department of Public Works or the Parking Violations Bureau. Accordingly, defendants Cambariere, Markowitz-Moses, Perillo, Parise, Shew, DiCuirci, Mosqueda, Greenan, Cioffi and Pugliese are entitled to summary judgment on the remainder of plaintiff's selective enforcement claim.  Similarly, plaintiff fails to identify a specific individual defendant who allegedly caused plaintiff to be barred from the

Parking Violations Bureau. Accordingly, plaintiff's selective enforcement claim on the ground that she was barred from the Parking Violations Bureau is dismissed.

    B. Building Department

Defendants concede that plaintiff, at some point, was barred from the Building Department. As to the first element of her selective enforcement claim, "[a]n order that singles out an individual and restricts his ability to enter the municipal building during office hours is the quintessential example of selective treatment." See Tiffany v. Village of Briarcliff Manor, No. 95 Civ. 8335, 1997 WL 177895, at *10 (S.D.N.Y. Apr. 14, 1997). Further, viewing the record as a whole, there is a genuine issue of material fact with respect to Caraisco's motivation. Accordingly, defendant Caraisco is not entitled to summary judgment regarding plaintiff's selective enforcement claim based upon her allegation that she was denied access to the Building Department.

    C. Department of Public Works

Plaintiff alleges that, in or about June 1995, defendant Stone denied plaintiff access to the Ossining Department of Public Works. As stated above, assuming the facts to be as plaintiff alleges, the first element of plaintiff's selective enforcement claim is satisfied. However, there is no evidence in the record from which a reasonable jury could conclude that Stone's alleged selective treatment of plaintiff "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Accordingly, plaintiff's selective enforcement claim on the ground that she was barred from the Department of Public Works is dismissed.

**VIII. MUNICIPAL LIABILITY AND OFFICIAL CAPACITY CLAIMS**

Plaintiff seeks to hold the Village of Ossining liable for the alleged violations of her constitutional rights.  A municipality may be held liable pursuant to 28 U.S.C. § 1983 where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694.  Here, plaintiff's conclusory assertions notwithstanding, the record is devoid of evidence necessary to create an issue of fact that a municipal policy or custom led to the alleged violations of plaintiff's constitutional rights.  See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (no municipal liability where the "record [was] devoid of any evidence from which a reasonable juror could have inferred the existence of a municipal policy" that caused the violation of a constitutional right).[3]  Accordingly, defendants' motion for summary judgment with respect to plaintiff's constitutional claims against the Village of Ossining is granted.

As to plaintiffs' claims against the individual defendants in their official capacities, "[s]uits against government agents in their official capacities do not differ in substance from suits against municipalities, and therefore the same limitations on liability apply."  Hamilton v. New Haven, 213 F. Supp.2d 125, 132 (D. Conn. 2002).  As stated above, plaintiffs have offered no evidence that the individual defendants acted pursuant to a municipal policy or custom.  Accordingly, plaintiffs' constitutional claims against the individual officers in their official capacities must also be dismissed.

---

[3] Additionally, although plaintiff's claim of selective enforcement survives as to defendant Caraisco, there is no evidence in the record from which a reasonable jury could infer that Caraisco serves as a policymaker in the Village of Ossining.

## IX.  SPEEDY TRIAL

Plaintiff contends that defendant Pugliese violated her right to a speedy trial. Pugliese argues that plaintiff should be barred from raising a speedy trial claim because it has been adjudicated in state court.  Pursuant to 28 U.S.C. § 1738, federal courts must accord state court judgments the same preclusive effect accorded by other state courts.  See Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan, 263 F.3d 196, 200 (2d Cir. 2001); See also U.S. Const. Art. IV, § 1.  Under New York law,

> the doctrine of collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.  There are two requirements for the application of collateral estoppel to an issue: (1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling.

Burgos v. Hopkins, 14 F.3d 787, 792 (2d Cir. 1994) (internal quotations and citations omitted).

During her criminal proceedings, plaintiff moved to dismiss the five superceding misdemeanor indictments on the ground, *inter alia*, that her right to a speedy trial was violated.  By Decision and Order dated February 1, 2000, the Village of Briarcliff Manor Justice Court concluded that plaintiff was not denied a speedy trial and, thus, denied plaintiff's motion to dismiss to the extent it was based upon CPL §§ 30.30 and 170.30(1)(c).  Therefore, in denying plaintiff's motion to dismiss, the state court necessarily decided the issue presented here, to wit, whether plaintiff was denied a speedy trial during the course of her prosecution for second degree aggravated harassment.  Further, a review of the record of plaintiff's criminal proceeding reveals

that she had a full and fair opportunity to litigate her speedy trial claim.  Plaintiff is thus precluded from arguing in the present action that she was denied a speedy trial.  Accordingly, defendant Pugliese is entitled to summary judgment on plaintiff's speedy trial claim.[4]

## X.  VILLAGE PARKING ORDINANCE

Plaintiff also challenges, via a pendant state claim, the constitutionality of Ossining's Village Parking Law.  However, this Court lacks subject matter jurisdiction over said claim pursuant to the *Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine bars challenges in federal court to the substance of state-court decisions which are more properly raise on appeal, even where such challenges appear to raise questions of federal law on their face."  Granger v. Harris, No. CV-05-3607, 2007 WL 1213416 (E.D.N.Y. Apr. 17, 2007) (citing Hoblock v. Albany Co. Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005)).  The application of the doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

By Decision dated June 28, 2004, the Village of Ossining Justice Court (Grass,

---

[4] Although Pugliese did not plead collateral estoppel as an affirmative defense, plaintiff does not claim that she would be prejudiced if the Court were to consider the defense in the context of the instant motion.  Indeed, because Pugliese raised the defense of collateral estoppel in his motion for summary judgment, plaintiff was provided notice and an opportunity to respond (and, in fact, did so on the merits).  See Curry v. City of Syracuse, 316 F.3d 324 (2d Cir. 2003).

J.) held that the Village Parking Law was constitutional.  The state court rendered its decision in response to plaintiff's motion seeking a determination that "Ossining Village Local Law Sec. 250-29 [is[ unconstitutional, and illegally constituted under New York State Vehicle and Traffic Law Sec. 1604, and in violation of the New York State Constitution."  See Statement of Facts (Village defendants), Exh. T.  Clearly, plaintiff's present pendant state claim that the Ossining Village Parking Law is unconstitutional is essentially a de facto appeal of the prior state court decision and, therefore, is barred by the *Rooker-Feldman* doctrine.  Accordingly, plaintiff's claim that Ossining's Village Parking Law is unconstitutional is dismissed.

## XI. CONVERSION

Plaintiff's remaining claim is a pendant state claim for conversion against defendant Cambariere.  A review of the record reveals genuine issues of material fact which preclude summary judgment on said claim.  Accordingly, defendants' motion for summary judgment as to plaintiff's conversion claim is denied.

## XII. CONCLUSION

For all of the foregoing reasons, (1) defendant Pugliese's motion for summary judgment is **granted**[5] and (2) the Village defendants' motion for summary judgment is **granted in part and denied in part.**

Accordingly, defendants are entitled to summary judgment with respect to all

---

[5] Pugliese's cross-claim is also dismissed as moot.

Accordingly, defendants are entitled to summary judgment with respect to all claims **EXCEPT** (1) plaintiff's selective enforcement claim against defendant **Caraisco** based upon plaintiff's allegation that she was denied access to the Building Department and (2) plaintiff's pendant state law claim for conversion against defendant **Cambariere**.

Dated: September 27, 2007
White Plains, New York

**SO ORDERED**:

_____
GEORGE A. YANTHIS, U.S.M.J.